IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>F.T.K. Worldwide Mfg BVBA a/k/a FTK Worldwide Manufacturing BVBA,<br><br>        Debtor in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. [17-_____] (KG) |

## DECLARATION OF BENNY GOOSSENS IN SUPPORT OF CHAPTER 15 PROCEEDINGS FOR F.T.K. WORLDWIDE MFG BVBA A/K/A FTK WORLDWIDE MANUFACTURING BVBA

I, Benny Goossens, hereby declare under penalty of perjury under the laws of the United States:

1. I am one of two permanent trustees-in-bankruptcy (each a "Trustee-in-Bankruptcy," and with Mr. Frans De Roy, the "Trustees-in-Bankruptcy") for F.T.K. Worldwide Mfg BVBA a/k/a FTK Worldwide Manufacturing BVBA ("FTK"), appointed by the Commercial Court of Antwerp, Belgium, Antwerp Division (the "Belgian Court") by order dated December 21, 2017 (the "Commencement Order"), Dutch and English translation copies of which are attached hereto as **Exhibits A and B**, respectively.

2. Each of the Trustees-in-Bankruptcy has independent full authority to act on behalf of FTK without obtaining the written consent of the other Trustee-in-Bankruptcy.

---

[1]     The last four digits of the Debtor's company number are 7960. The Debtor's main corporate and mailing address is Schupstraat 9-11, P.O. Box 75, 2018 Antwerp 1.

3. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently hereto. All statements made herein are true and correct to the best of my knowledge, information, and belief.

4. On November 24, 2017, the Public Prosecutor of the Court of First Instance of Antwerp (the "Belgian Prosecutor") petitioned the Belgian Court to declare FTK bankrupt and appoint a trustee-in-bankruptcy over FTK (the "Petition").

5. In making that Petition, the Belgian Prosecutor was exercising his official prosecutorial duties and was not seeking any recovery or remuneration on behalf of the Belgian Government or any of its organs or agencies. The Belgian Prosecutor also did not initiate the Belgian Proceeding to protect a specific creditor but to protect the public interest and the public's confidence in the Belgian commercial system. The Petition was consistent with the Belgian Prosecutor's mandate to serve the public policy and ensure an impartial and transparent administration of FTK's assets for the benefit of its creditors. The appointment of the Trustees-in-Bankruptcy was the process available to the Belgian Prosecutor by which an independent third-party was able to take control over FTK and its assets, prevent any improper dissipation of assets or removal of assets from Belgium, obtain a report from the Trustees-in-Bankruptcy as to the results of the investigations which might be relevant to the Belgian Prosecutor's criminal investigations of Exelco, which is a related entity of FTK, and ensure the impartial and transparent administration of FTK's assets for the benefit of all creditors.

6. The Trustees-in-Bankruptcy are required to communicate with the Belgian Prosecutor's office with respect to any possible suspected illegal activity. Pursuant to Article 60 of the Belgian Bankruptcy Act of 1997 (the "Belgian Bankruptcy Act"), within two (2) months of the commencement of a Belgian case, the Trustees-in-Bankruptcy are required to provide the

Belgian Prosecutor's office with a report describing the Trustees-in-Bankruptcy's findings as to the overall financial health of FTK and the main causes and circumstances leading up to the bankruptcy.

7. On December 21, 2017, the Belgian Court issued the Commencement Order finding FTK to be bankrupt. The Belgian Court further appointed Mr. De Roy and myself as Trustees-in-Bankruptcy of FTK supplanting the management of FTK.

8. On December 22, 2017, the Belgian Court issued a certification of our authority as Trustees-in-Bankruptcy to act in all matters on behalf of FTK (the "Certification of Authority"). Judge Thomas Van Houtte granted us the "full powers under the Belgian bankruptcy law in order to manage the bankruptcy of [FTK], to seize, and, take care of the realization of all assets of that company wherever they are located..." Certification of Authority, at 1. Further, Judge Van Houtte stated, "I also declare hereby that I am aware that the above mentioned trustees in bankruptcy seek recognition as foreign representatives to be granted by the US Courts, and, I fully support and encourage such application for recognition." A copy of the Certification of Authority is attached hereto as **Exhibit C**.

9. Our appointment as Trustees-in-Bankruptcy of FTK divested the management and directors and officers as well as shareholders of FTK of any authority over FTK and supplanted the management of FTK pursuant to Belgian corporate law. Thus, Mr. De Roy and I are now the sole parties with the power and authority to control FTK's business and assets. We are the only legal representatives of FTK at this time, and, as such, must authorize any action taken by or on behalf of FTK.

10. Furthermore, as a result of our appointment as the Trustees-in-Bankruptcy of FTK, Mr. De Roy and I are under an explicit legal obligation under the laws of Belgium to

marshal and protect the assets of FTK under the supervision of our judge commissioner Mr. Henri Colman. The Belgian Proceeding grants us, the Trustees-in-Bankruptcy, very broad powers which include but are not limited to (i) collection of assets, (ii) adjudication of claims, (iii) chairing meeting of creditors, (iv) filing suits on behalf of the debtor, (v) pursuing assets, (vi) distributing available proceeds, and (vii) reporting the Belgian Prosecutor of any suspected criminal activity discovered while performing our duties, and (viii) if needed, continuing the company's operations as a going-concern. The Belgian Proceeding encompasses all of FTK's creditors – secured, priority and unsecured creditors, both in Belgium and worldwide.

11. Our duties as the Trustees-in-Bankruptcy in the Belgian Proceeding include the obligation to administer the assets of FTK in Belgium and abroad which includes, but is not limited to, (i) inventorying all assets, (ii) investigating any loss of assets, (iii) investigation of the accounting of the bankrupt company, (iv) if needed, starting proceedings against liable persons (such as directors) involving in the company, (v) ordering such urgent measures as are needed to protect the assets in the bankrupt's estate, (vi) locating and securing estate assets, (vii) marketing any available assets for sale to obtain the highest and best offer for FTK and its creditors, (viii) seeking recognition in foreign countries in order to administer and collect assets and pursue claims outside of Belgium, and (ix) distributing any available proceeds to FTK's creditors pursuant to Belgian law.

12. The Belgian bankruptcy procedure is – to my understanding - very similar to the U.S. bankruptcy process. Once a bankruptcy case is commenced, trustees-in-bankruptcy are tasked with investigating debtor's assets and subsequently trying to maximize the value of debtor's assets and generating the highest and best proceeds for the estate. The former directors of the bankrupt company will be heard on that matter (article 75 §1 of the Belgian Bankruptcy

Act). Sometimes, depending on the specific facts of the case, the trustees-in-bankruptcy are allowed to continue operating the bankrupt business (if not already shut down) for a certain period of time if the trustees-in-bankruptcy believe that sale of the business as a going-concern is likely and will generate higher proceeds to the estate. This would require an authorization by the Judge Commissioner, and is to be confirmed by the court.

13. In every aspect of a Belgian bankruptcy proceeding, creditors, no matter where located in the world, are afforded similar protections as they are under U.S. law. The trustees-in-bankruptcy are required to provide a notice to all creditors (as far as they are known) as to the deadline for filing a proof of claim in the case (article 62 of the Belgian Bankruptcy Act). Generally, that deadline is set out in the declaration of bankruptcy, but expires anyway one year after that declaration (article 72 of the Belgian Bankruptcy Act). The notice of the deadline is provided by an announcement in the Belgian Official Gazette and by a circular issued by the trustee-in-bankruptcy as soon as the creditors are known. Creditors may file claims without the need to hire Belgian counsel and there is no requirement they travel to Belgium to submit their claims. Belgian trustees in bankruptcy always remain under the supervision of the Judge Commissioner and the Bankruptcy Court. In addition, creditors can contest any actions taken by the trustees before that Court.

14. Once the deadline for filing a proof of claim passes, claims are verified by the trustee-in-bankruptcy with creditors being afforded the opportunity to participate in the claim verification process. In case of a dispute, the claim will be subject to a decision made by the Court, in which the creditor will be heard with all his arguments. Once all proofs of claims are filed, verified and ultimately resolved by a Court's decision (if needed), a trustee-in-bankruptcy will notify all creditors for a meeting in Court on a fixed date and time (Meeting of Creditors)

(article 79 Belgian Bankruptcy Act). There again, creditors can ultimately consent or not. If one of those creditors contests the proposed scheme of distribution, this again can be subject to a decision of the Court. Once after every possible dispute has been settled, can the distribution of the proceeds of the bankrupt estate go forward to the respective creditors, taking into account the creditors' priority. The Belgian priority scheme is – to my understanding - similar to the U.S. in that unsecured creditors' and general priority creditors' claims are junior to the special priority creditors, mortgagees and lien-holders in the distribution of the assets of a bankrupt debtor's estate, although there may be some differences (Belgian Act on Mortgages and Priorities of 1851).

15. Following our appointment as Trustees-in-Bankruptcy, our investigation into FTK's business and assets revealed the following:

- FTK is based solely in Belgium and all corporate-level decision-making and corporate administrative functions affecting FTK is or were centralized in Antwerp, Belgium.

- 
- FTK has no offices or employees located in the United States.

- FTK is owned by Lior Kunstler (50%) and Jean Paul Tolkowsky (50%).

- FTK was previously a debtor-in-possession in a Chapter 11 filed before this Court (Case No. 17-12031) which was subsequently dismissed on December 11, 2017; the dismissal order has been now appealed without the Trustees-in-Bankruptcy's consent.

- FTK is not a subsidiary or parent of any other company, including but not limited to the companies referenced on the organizational chart attached hereto as **Exhibit D**.

- FTK has no current employees.

- All of FTK's principal non-insider creditors are based in Belgium or Europe.

- FTK is a private limited liability company formed under the law of Belgium.

6

- There are no other foreign proceedings that give power to control FTK's business or assets.

16. In an oral ruling on December 11, 2017, and by an order entered on December 12, 2017, the Trustees-in-Bankruptcy were previously recognized as foreign representatives of a related entity Exelco NV in Exelco NV's chapter 15 proceeding filed with the United States Bankruptcy Court for the District of Delaware, Case No. 17-12409. [Case No. 17-12409, D.I. 27].

17. FTK, along with Exelco NV, Exelco North America, Inc., Ideal Diamond Trading Limited, Ideal Diamond Trading USA, Inc., Exelco (Asia) Limited, and Exelco International Limited, was a debtor-in-possession in six chapter 11 cases pending before this Court which were filed between September 26 and December 3, 2017 (each a "U.S. Proceeding," and collectively, the "U.S. Proceedings"). The U.S. Proceedings were dismissed at a hearing held on December 11, 2017 and an Order confirming the dismissals was entered as of record on December 13, 2017.

18. At this time there is no pending Chapter 11 case for FTK. However, the displaced management of FTK has attempted once again to interfere with the Trustees-in-Bankruptcy's duties to take control over FTK and its assets by filing an appeal of the dismissal order of FTK's U.S. Proceeding five days after FTK was declared bankrupt and the Trustees-in-Bankruptcy were appointed to, among other things, take control over its assets. *In re FTK Worldwide Mfg. BVBA*, Case No. 17-12031, D.I. 82 (Dec. 26, 2017).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: December 29, 2017
       Antwerp, Belgium

_____
Benny Goossens, Permanent Trustee-in-Bankruptcy of F.T.K. Worldwide Mfg BVBA a/k/a FTK Worldwide Manufacturing BVBA